IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JUAN CARLOS OSUNA, #244495,      )
                                 )
           Plaintiff,         )
                                 )
      v.                  )       CASE NO. 1:05-CV-173-MEF
                                 )            [WO]
                                 )
SHERIFF ANTHONY CLARK,     )
                                 )
          Defendant.     )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This case is pending before the court on a 42 U.S.C. § 1983 complaint filed by Juan

Carlos Osuna ["Osuna"], a state inmate, in which he alleges constitutional violations

related to his previous confinement in the Covington County Jail.  In the complaint, as

amended, Osuna contends that the defendant (i) forced religion on him by allowing only

a Bible for reading material, (ii) denied him the opportunity to attend chapel while allowing

inmates assigned to other cell blocks this opportunity, (iii) denied him access to the courts,

(iv) failed to provide him a satisfactory amount of food, (v) denied him adequate exercise,

(vi) restrained his ability to communicate telephonically with the free-world, (vii) subjected

him to overcrowded living conditions, and (viii) denied him unfettered access to running

water and toilet facilities due to overcrowding in the jail.  The sole defendant remaining

before the court is Anthony Clark, the sheriff of Covington County, Alabama.  Osuna seeks

monetary damages for the alleged violations of his constitutional rights.

The defendant filed special reports and supporting evidentiary materials addressing Osuna's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat these reports as a motion for summary judgment.  *Order of April 12, 2005 - Court Doc. No. 10* and *Order of June 15, 2005 - Court Doc. No. 20*.  Thus, this case is now pending on the defendant's motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the motion, the court concludes that the defendant's motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

To survive the defendant's properly supported motion for summary judgment, Osuna is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Anderson v. Liberty Lobby*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice;

there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). A plaintiff's conclusory allegations similarly do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Consequently, where the

3

evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  In this case, Osuna has failed to demonstrate that there are any genuine issues of material fact relative to his claims for relief as is necessary to preclude entry of summary judgment in favor of defendant Clark. *Matsushita*, *supra*.

### III.  DISCUSSION OF CLAIMS[1]

### A.  Claims Against Defendant Clark in his Official Capacity

To the extent Osuna sues Sheriff Clark in his official capacity, the defendant is immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  Under all facets of Alabama law, a county sheriff and his jailers act as state officers "when supervising inmates and otherwise operating the county jails."  *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff as member of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is  executive officer of the State).  "A

---

[1]On June 23, 2004, Osuna entered the Covington County Jail on charges of trafficking in marijuana and possession of drug paraphernalia. The pleadings indicate that the actions which form the basis of the instant complaint occurred during Osuna's incarceration in the Covington County Jail as a pretrial detainee. The Fourteenth Amendment, rather than the Eighth Amendment, provides the appropriate standard for assessing whether conditions of confinement imposed upon a pretrial detainee are violative of the Constitution.  *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause...."). However, for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment. *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492 (1986); *Cottrell*, 85 F3d at 1490 ("[T]he applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."). Thus, this court will rely on cases interpreting the Eighth Amendment's prohibition against cruel and unusual punishment and the First Amendment's protections of religious freedom, and not the Fourteenth Amendment's guarantee of due process, when addressing the plaintiff's claims for relief because the standard for violations of the Eighth and First Amendments apply to pretrial detainees through the Due Process Clause of the Fourteenth Amendment.  *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that defendant Clark is a state official entitled to Eleventh Amendment immunity when sued in his official capacity and is therefore entitled to absolute immunity from the claims asserted by the plaintiff against him in his official capacity.

## B. Claims Against Defendant Clark in his Individual Capacity

The law is well settled that an Alabama "Sheriff can have no respondeat superior [or vicarious] liability for a section 1983 claim." *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001); *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Gonzalez v. Reno*, 325 F.3d 1228,

6

1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1115-1116 (11th Cir.2005) (In establishing liability under § 1983, a prisoner cannot rely on theories of vicarious liability or respondeat superior.).   Thus, defendant Clark is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation."  *Cotton v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted).

It is undisputed that defendant Clark did not personally participate in any of the actions about which Osuna complains.  Additionally, the pleadings filed by the parties establish that Clark had no personal knowledge of the specific facts relative to the alleged violations of Osuna's constitutional rights.  *Defendants' Special Report - Court Doc. No. 8-1* at 11 ("[t]he Plaintiff's statement of the facts is devoid of any reference to Sheriff Anthony Clark.   Furthermore, the uncontroverted evidence demonstrates that this Defendant was not present during any of the events set out in the Plaintiff's Complaint."); *Defendant's Exhibit B - Affidavit of Anthony Clark* at 1-2 -- *Court Doc. No. 8-3* at 2-3 ("I

7

have no personal knowledge of any of the facts stated in the Complaint.  I did not become aware of the allegations made the basis of the Plaintiff's Complaint until I was served with it....  I am not personally involved in the day-to-day operations of the jail.").  In his complaint, as amended, Osuna does not allege that Sheriff Clark personally participated in the asserted violations of his constitutional rights.  Moreover, Osuna concedes he did not advise Sheriff Clark of the conditions in the Covington County Jail.  *Plaintiff's July 12, 2005 Response to the Special Report - Court Doc. No. 21* at 4 (It is the responsibility of jail officials, not an inmate, "to make Sheriff Clark aware of the obviously wrong conduct of the jail staff when exercising some of the jail policies.").

In light of the foregoing, defendant Clark may be held liable in this § 1983 action if his actions bear a causal relationship to the alleged violations of Osuna's constitutional rights.  To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of the defendant, Osuna must present sufficient evidence of either "a history of widespread abuse [that] put[] [Sheriff Clark] on notice of the need to correct the alleged deprivation, and he fail[ed] to do so...." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Sheriff Clark] directed the subordinates to act unlawfully, or knew that the subordinates would act unlawfully and failed to stop them from doing so."  *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the pleadings and

8

evidentiary materials submitted in this case demonstrates that Osuna has failed to meet this burden

### C.  Causal Relationship Test

The record before the court is devoid of evidence to support an inference that Sheriff Clark directed jail personnel to act unlawfully or knew that jail personnel would act unlawfully and failed to stop them from doing so.  Osuna has likewise failed to show a history of widespread abuse at the Covington County Jail which put Sheriff Clark on notice of any alleged constitutional violations.  Consequently, neither of these methods of establishing liability under the causal relationship test provides a basis for liability under § 1983.  The court will therefore address whether the customs or policies of the Covington County Jail resulted in violations of Osuna's constitutional rights.

1.  <u>Forced Religion - Reading Material Policy</u>.  Osuna asserts that on February 4, 2005, a correctional officer confiscated all his reading material except his Bible.  *Plaintiff's Complaint - Court Doc. No. 1* at 3.  The plaintiff complains that although he "is a religious person" allowing only a Bible for reading purposes forced religion on him.[2]  *Plaintiff's April 22, 2005 Amendment to the Complaint - Court Doc. No. 12* at 1.  "The Covington County Sheriff's Department has a policy that inmates are allowed to possess and read any

---

[2]The court construes this claim as one arising under the Establishment Clause of the First Amendment.  However, the claim is, at best, a tenuous allegation of a constitutional violation.  Specifically, the mere fact jail personnel allowed Osuna to possess a Bible in no way suggests that they forced him to read his Bible.  It is undisputed that Osuna could choose not to read anything, including the Bible.

material bound in a 'soft' or 'paperback' binding and which does not contain sexually explicit or pornographic material, or contain other content which would be harmful or dangerous to other inmates or jail personnel.  This policy does not restrict the inmates' reading material to religious or otherwise sectarian materials."  *Defendant's Exhibit B - Affidavit of Anthony Clark* at 2 -- *Court Doc. No. 8-3* at 3.  "[T]he policy of the Covington County Jail is that, while every inmate is to have access to religious services or pastoral care, no inmate is required to avail themselves of such services....  Inmates are permitted to choose the extent to which they avail themselves of religious materials and services, and no inmate is coerced, forced or intimidated into doing so against their will...."  *Defendants' Supplemental Special Report - Court Doc. No. 15-1* at 7 (citations omitted).

The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion...."  U.S. Const. Amend. I.  It applies to state governments through the Fourteenth Amendment.  *Board of Education v. Grumet,* 512 U.S. 687, 690 (1994).  To survive an Establishment Clause challenge, a practice "must have a secular legislative purpose, ... its principal or primary effect must be one that neither advances nor inhibits religion, ... [and it] must not foster 'an excessive government entanglement with religion.'" *Lemon v. Kurtzman*, 403 U.S. 602, 612-613 (1971) (citations omitted).  In *Lee v. Weisman*, 505 U.S. 577 (1992), the Supreme Court focused on the minimum requirements of the Establishment Clause concluding that "[i]t is beyond dispute that, at

a minimum, the Constitution guarantees that government may not *coerce* anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Id.* at 587 (emphasis and brackets in original) (quoting *Lynch v. Donnelly,* 465 U.S. 668, 678 (1984)).  If a practice meets the *Lemon* test, there is no violation of the Establishment Clause.

When evaluating whether a program advances or inhibits religion, the court must "[pay] particular close attention to whether the challenged governmental practice either has the purpose or effect of 'endorsing' religion." *County of Allegheny v. ACLU,* 492 U.S. 573, 592 (1989).  The term "endorsement" has been defined as "conveying or attempting to convey a message that religion or a particular religious belief is *favored* or *preferred*" or "promot[ing] one religion or religious theory against another or even against the militant opposite." *County of Allegheny,* 492 U.S. at 593; *Glassroth v. Moore,* 229 F.Supp.2d 1290, 1301-1302 (M.D. Ala. 2002).

The pleadings before this court clearly demonstrate that the reading material policy at issue, standing alone, does not in any way promote religion.  Moreover, it is undisputed that Osuna could opt not to read anything, including the Bible, during his incarceration in the Covington County Jail.  In light of the foregoing, the court concludes that the policy is not an endorsement of a particular religion and does not foster an excessive entanglement of the government with religion. *See Boyd v. Coughlin,* 914 F.Supp. 828,

11

833 (N.D.N.Y. 1996). Therefore, the plaintiff has failed to demonstrate that the policy

implemented by Sheriff Clark violates the Establishment Clause of the First Amendment.

2. <u>Chapel Attendance</u>. Osuna complains that beginning "April 6, 2005, inmates in

'A' Block - where plaintiff is confined - were discriminated by denial of permission to go

to chapel, when the rest of inmates blocks in [the] jail could [attend chapel]." *Plaintiff's*

*April 22, 2005 Amendment to the Complaint - Court Doc. No. 12* at 2. The court construes

this claim as one alleging violations of the plaintiff's equal protection and free exercise

rights.

Defendant Clark maintains that the allegation of discriminatory treatment violative

of the Constitution "is false." *Defendants' Supplemental Special Report - Court Doc. No.*

*15-1* at 7. "The Covington County Jail provides chapel services for the male inmates on

Tuesday and Thursday evenings, and Sunday mornings when practicable.... The Jail

chapel facility is designed to accommodate approximately thirty (30) inmates. However,

prior to March 20, 2005, [chapel] attendance had on occasion totaled in excess of sixty (60)

inmates. Since March 30, 2005, the Jail has instituted a policy of alternating, on a service-

by-service basis, the cell blocks which are permitted to attend chapel services. This policy

was instituted for two purposes: first, to prevent violent confrontations between inmates

segregated in different cell blocks which are known to be hostile towards one another; and

second, to prevent the foregoing overcrowding at the chapel services, which overcrowding

poses a risk of injury or escape.  Every cell block is permitted to attend chapel on at least

a weekly basis." *Defendants' Exhibit A - Affidavit of Jail Administrator Jerry Edgar* at 3 --

*Court Doc. No. 15-2* at 3.

In order to present a claim cognizable under the Equal Protection Clause, "a prisoner

must demonstrate that (1) 'he is similarly situated with other prisoners who received' more

favorable treatment; and (2) his discriminatory treatment was based on some

constitutionally protected interest such as race.  *Damiano v. Fla. Parole & Prob. Comm'n*,

785 F.2d 929, 932-33 (11ᵗʰ Cir.1986) (per curiam)."  *Jones v. Ray*, 279 F.3d 944, 946-947

(11ᵗʰ Cir. 2001).  Moreover, to establish an equal protection violation, a plaintiff must

demonstrate the existence of intentional or purposeful discrimination.  *Whitus v. Georgia*,

385 U.S. 545, 550 (1967); *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Jones v. White*, 992

F.2d 1548, 1573 (11ᵗʰ Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-1114

(11ᵗʰ Cir. 1987), *cert. denied*, 485 U.S. 961 (1988); *Village of Arlington Heights v. Metro.*

*Housing Development Corp.*, 429 U.S. 252, 265-266 (1977).  "Mere error or mistake in

judgment ... does not violate the equal protection clause.  There must be intentional

discrimination [by the defendants]....  Even arbitrary administration of [parole regulations],

without purposeful discrimination, does not violate the equal protection clause."  *E & T*

*Realty*, 830 F.2d at 1114 (citations omitted); *McCleskey v. Kemp*, 481 U.S. 279, 292-293

(1987) (simple disparity of treatment between individuals of different races is  insufficient

to establish discrimination).   "The requirement of intentional discrimination prevents

plaintiffs from bootstrapping all misapplications of [rule and regulations] into equal

protection claims.  'Probably no law contrived by man for his own governance ever has had

or will be enforced uniformly and without exception.  But the Constitution does not

demand perfection.'"  *E & T Realty*, 830 F.2d at 1114 (citations omitted).  Consequently,

> [p]roof of racially discriminatory intent or purpose is required to show a
> violation of the Equal Protection Clause."  *Arlington Heights*, 429 U.S. at
> 265, 97 S.Ct. 555.  Indeed, it is well established that proving intent to
> discriminate is the essential element of an equal protection claim.  *See, e.g.,*
> ; *Hernandez v. New York*, 500 U.S. 352, 359-60, 111 S.Ct. 1859, 114
> L.Ed.2d 395 (1991) ("A court addressing [an equal protection claim] must
> keep in mind the fundamental principle that 'official action will not be held
> unconstitutional solely because it results in a racially disproportionate
> impact....  Proof of racially discriminatory intent or purpose is required to
> show a violation of the Equal Protection Clause.'" (omission in original)
> (quoting *Arlington Heights*, 429 U.S. at 264-265, 97 S.Ct. 555)); *Washington
> v. Davis,* 426 U.S. 229, 240, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Johnson
> v. Bush,* 405 F.3d 1214, 1218 (11th Cir.2005); *Citizens Concerned About Our
> Children v. Sch. Bd.,* 193 F.3d 1285, 1294 (11th Cir.1999); *Elston v.
> Talladega County Bd. of Educ.*, 997 F.2d 1394, 1406 (11th  Cir.1993);
> *Mencer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir.1998); *Parks v. City
> of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995).

*Holton v. City of Thomasville School District*, 425 F.3d 1325, 1348-149 (11th Cir. 2005).

"'Discriminatory purpose,' however, implies more than intent as volition or intent

as awareness of consequences....  It implies that the decision maker ... selected ... a

particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse

effects upon an identifiable group."  *Personnel Administrator of Massachusetts v. Feeney*,

14

442 U.S. 256, 279 (1979).    In a case such as this one, where the plaintiff challenges actions of jail officials, exceptionally clear proof of discriminatory intent is required.  *See Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988). Where a plaintiff presents no evidence of purposeful discrimination, the law requires entry of summary judgment in favor of the defendant.  *McCleskey*, 481 U.S. at 292; *E & T Realty*, 830 F.2d at 1115.

This case is before the court on a properly supported motion for summary judgment from defendant Clark.  Osuna therefore bears the burden of producing specific, substantial evidence that the defendant intentionally discriminated against him due to some constitutionally impermissible reason.  *Arlington Heights*,  429 U.S. at 265; *Wallis v. J. R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).  Purposeful discrimination can be shown either by direct evidence, i.e., admissions of the defendant, or indirectly by way of circumstantial evidence.  *Arlington Heights*, 429 U.S. at 265-266. A plaintiff, however, cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment.  *Anderson v. Liberty Lobby*, 477 U.S. at 252. Instead, the law is clear that a plaintiff must present significant probative evidence to preclude summary judgment in favor of the defendant.  *Id*. at 249.

Initially, the court concludes that the policy implemented by the Covington County

Jail limiting an inmate's attendance at chapel to the chapel service designated for his/her assigned cell block in an effort to maintain security is not violative of the Equal Protection Clause.  Additionally, Osuna utterly and completely fails to meet his pleading burden on the equal protection claim as he does not allege that the jail policy resulted in his being subjected to adverse treatment based on some constitutionally impermissible reason.  In short, Osuna sets forth no facts to support his allegation of an equal protection violation; rather, he simply makes the conclusory assertion that not allowing him to attend all chapel services constituted discrimination.  Moreover, it is undisputed that the action about which Osuna complains transpired for security reasons.  Summary judgment is therefore due to be granted in favor of the defendant on Osuna's equal protection claim.

To the extent Osuna challenges the chapel attendance policy as a denial of the free exercise of his religion, he is likewise entitled to no relief.  It is clear from the evidentiary materials submitted by the parties that Osuna could freely practice his religion while incarcerated in the Covington County Jail.  There is nothing before the court to indicate that the policy governing chapel attendance unreasonably restricted Osuna's ability to observe his religion.  *See Employment Div. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).  An inmate's free exercise right does not "depend upon his ability to pursue each and every aspect of the practice of his religion." *Canedy v. Boardman,* 91 F.3d 30, 33 (7th

Cir. 1996). Furthermore, the record is devoid of any evidence that jail personnel implemented the policy at issue to infringe upon Osuna's religious rights. *See, e.g., Sasnett v. Litscher,* 197 F.3d 290, 293 (7th Cir. 1999). Osuna has therefore failed to establish that the chapel attendance policy resulted in a violation of the First Amendment and the motion for summary judgment with respect to this claim should be granted in favor of the defendant.

3. <u>Access to the Courts</u>. Osuna complains jail personnel denied him access to legal materials and the law library in violation of his right of access to the court. In response to this claim, defendant Clark maintains that "[t]he Covington County Jail has a law library for the use of the inmates. As a matter of Jail policy, all inmates in the jail have access to the law library. This access is provided either by allowing a requesting inmate to visit the room where the materials are kept, or, in the case of segregated inmates, by bringing the materials to the inmate." *Defendant's Exhibit B - Affidavit of Anthony Clark* at 2 -- *Court Doc. No. 8-3* at 3.

The law is well settled that inmates are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance created in *Bounds*. Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show

17

actual injury" arising from the alleged inadequacies in the law library or legal assistance program. *Lewis*, 518 U.S. at 349.  In identifying the specific right protected by *Bounds*, the Court explained that "*Bounds* established no ... right [to a law library or to legal assistance].  The right that *Bounds* acknowledged was the (already well-established) right of ***access to the courts***....  [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'"  *Id*. at 350-351 (emphasis in original) (citations omitted).  The Court further determined *Bounds* did not require "that the State ... enable the prisoner to ***discover grievances***, and to ***litigate effectively*** once in court....  To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] ... the Constitution requires."  *Id*. at 354 (emphasis in original).

The Court similarly rejected the argument that the mere claim of a systemic defect, without a showing of actual injury, presented a claim sufficient to confer standing.  *Id*. at 349.  Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's capability to present claims.  518 U.S. at 356.  "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.  When any inmate ... shows that an actionable claim of this nature which

18

he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury. *Lewis*, 518 U.S. at 356. Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement.... [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id.* at 356-357. "[T]he Constitution does not require that prisoners ... be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance." *Id.* at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Id.* at 356. A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not ... thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.' [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500." *Id.* at 363.

Osuna has utterly and completely failed to come forward with any evidence that the policy about which he complains deprived him of the ***capability*** of pursing claims in this

or any other court.  Throughout the proceedings in this case, Osuna has repeatedly demonstrated that he is proficient and prolific at presenting and arguing claims to the court of his choice.  Nothing before the court indicates that the actions about which Osuna complains in any way improperly impeded or adversely affected his efforts to pursue nonfrivolous legal claims and, therefore, Osuna has failed to establish the requisite injury. *Lewis*, 518 U.S. at 356.  Consequently, there is no evidence that the law library/legal materials policy of the Covington County Jail deprived Osuna of access to the courts. Summary judgment is therefore due to be granted in favor of the defendant on this claim. *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

     4.  <u>General Conditions</u>.  Osuna complains that jail personnel (i) failed to provide him a satisfactory amount of food, (ii) denied him adequate physical exercise, (iii) denied him continuous access to water and toilet facilities, (iv) restricted his ability to communicate telephonically with the free-world, and (v) subjected him to overcrowded conditions.  In response to these allegations, defendant Clark asserts that "[t]he Covington County Jail has a policy of providing adequate housing, food, and toilet facilities for its residents.  Each inmate receives three nutritious meals per day and continual access to water and toilet facilities....  The Covington County Jail has an inmate visitation policy. However, the Covington County Jail has no authority or control over the failure of persons to visit an inmate." *Defendant's Exhibit B - Affidavit of Anthony Clark* at 3 -- *Court Doc.*

*No. 8-3* at 4.   Although the jail's population exceeded capacity during Osuna's incarceration, "[e]very inmate is given a bed or 6-inch thick sleeping mat to sleep on, as well as continual access to water and toilet facilities.  The jail is kept clean, and routinely passes quarterly inspection by the Covington County Health Department ... [and the State of Alabama].  Weather, permitting, it is the policy of the Covington County Jail to allow every inmate at least thirty (30) minutes per day to exercise in an outdoor exercise yard.  Frequently the inmates are allowed more than thirty minutes....  Every cell block contains two telephones for inmate use at any time between 10:00 a.m and 10:00 p.m., every day of the week.  Any inmate has access to and can utilize the telephones in his cell block at any time during those hours.  Telephone calls from cell block phones are charged at a rate set by contract between the telephone provider and the Covington County Commission.  The Covington County Jail, Covington County Sheriff's Department, and I individually have no control or influence over the telephone rates charged for the cell block phones.  It is the policy of the Covington County Jail to record every telephone call made from the cell block phones.  It would be a violation of this policy to fail to record any call made by an inmate from the Covington County Jail.  These recordings are not actively monitored, but are made and utilized for security purposes." *Defendants' Exhibit A - Affidavit of Jail Administrator Jerry Edgar* at 3-4 -- *Court Doc. No. 15-2* at 3-4.  The defendant further advises that "[a]t the beginning of any telephone call originating from a cell block phone,

21

a recorded message informs the parties that the call is being recorded and may be monitored." *Defendants' Supplemental Special Report - Court Doc. No. 15-1* at 10-11. It is likewise undisputed that inmates confined in the Covington County Jail are allowed to send and receive mail.

A jail official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health or safety when the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994). Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Id.* at 347. Moreover, a constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, ... and [that] the official does not respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844. Thus, in order to survive summary judgment on his claims challenging the conditions of confinement, the plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). "[D]eliberate indifference is a stringent standard of fault, requiring proof that [the] actor disregarded a known or obvious

consequence of his action." *Board of County Commissioners v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997); *see also Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir.1995).

Living conditions within a jail will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] ... [are] grossly disproportionate to the [reason for] imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Conditions ... alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency.... But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Rhodes*, 452 U.S. at 347. To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate. *Id*. at 366. In a case involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L. Ed. 2d 894 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

Osuna complains that during his incarceration in the Covington County Jail the jail experienced overcrowding and lacked a sufficient number of toilet and shower facilities.

23

Osuna further complains that the amount of food served failed to satisfy his appetite, he was denied adequate physical exercise and his ability to freely communicate with the outside world was hampered by the collect-call phone system and the automated message advising recipients that the calls would be recorded and could be monitored.   The defendant filed probative evidentiary materials which refute these claims.  Specifically, the affidavits and other relevant documents indicate that although the jail may have exceeded its design capacity Osuna received three nutritionally adequate meals each day, had the opportunity for daily physical exercise inside the jail and, when the weather permitted, outside exercise, and the water, toilet and shower facilities adequately accommodated the needs of inmates.  Additionally, Osuna could make contact with individuals in the free-world via either the collect-phone system, letter writing and/or visitation.  The fact that Osuna's family in Mexico chose not to visit him or that mail to/from Mexico could take up to 15 days to reach its destination are not factors attributable to any jail policy.  The court further notes that the recording and/or monitoring of inmate phone calls under the circumstances presented in this case is not violative of either federal law or the Fourth Amendment of the Constitution.  *United States v. Lewis*, 406 F.3d 11 (1st Cir. 2005); *United States v. Peoples*, 250 F.3d 630 (8th Cir. 2001); *United States v. Escobar*, 842 F.Supp. 1519 (E.D. N.Y. 1994); *United States v. Valencia*, 711 F.Supp. 608 (S.D. Fla. 1989); and *United States v. Paul*, 614 F.2d 115 (6th Cir.), *cert. denied* 446 U.S. 941, 100

24

S.Ct. 2165 (1980).

Despite his numerous contentions regarding conditions of confinement, Osuna has failed to meet his burden on summary judgment of establishing that the policies of the Covington County Jail resulted in a denial of the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson v. Seiter*, 501 U.S. 294 (1991); *Rhodes v. Chapman*, 452 U.S. at 347. Furthermore, Osuna has failed to demonstrate any deliberate indifference or reckless disregard by the named defendant with respect to his health or safety. *Farmer v. Brennan, supra.* Consequently, summary judgment is due to be granted in favor of Sheriff Clark on these claims.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendant's motion for summary judgment be granted.

2. Judgment be entered in favor of the defendant.

3. The costs of this proceeding be taxed against the plaintiff.

4. This case be dismissed with prejudice.

It is further

ORDERED that on or before August 22, 2007 the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general

25

objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 9th day of August, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE